## SLOTTS *v.* ROCKINGHAM COUNTY.

It is the duty of county commissioners, under Gen. Stats., ch. 267, sec. 2, to take all necessary precautions against sickness and infection in the common jails of the county; and that implies that the necessary expenses of such precautions shall be paid, in the first instance at least, by the county.

The county commissioners omitted to cause the dead body of an inmate of the jail, who had died of small-pox, to be removed and buried; the

jailer, after the lapse of thirty-two hours, employed persons to
move and bury the body.   *Held,* that the charge for such service shou
· be paid by the county, whether the deceased was a pauper when com
mitted to jail or not.

The question in this case is, whether the bill of the plaintiffs (James
D. Slott and James Slott) should be allowed against the county of
Rockingham, and if so, at what sum, upon the following statement of
facts : One Felch, a prisoner in jail at Exeter on criminal process, was
taken sick with small-pox.   Felch belonged to Seabrook.   The sheriff
of the county notified the selectmen and health officers of Exeter, and
requested them to remove him.   The jailer called a physician, who
declared that Felch had small-pox.   Thereupon the county commis-
sioners ordered his discharge from jail.   In point of fact, it would not
have been humane nor safe, either to the prisoner or to the public, to
have discharged him at any time after it was ascertained he had the
small-pox.

Felch died, and the body remained in the jail thirty-two hours, because
the jailer could not get any one to remove and bury it.   The selectmen
of Exeter made some efforts to· have the body buried, but failed.
Finally, the jailer employed the plaintiffs to perform the service, and
they did it under circumstances which were shown, but which need not
be here detailed.   For this service they claim to recover of the county
the sum of $225.   Felch was a poor person, without means of sup-
port, and his legal settlement was in Seabrook.

LADD, J.   Section 2, chapter 267 of the General Statutes, imposes
upon the county commissioners, among other things, the duty of taking
all necessary precautions against sickness or infection in the common
jails of the county.   The case shows that the dead body of Felch, who
had died of small-pox, remained in the jail thirty-two hours, because
the jailer could not get any one to bury it ; and further, that, when it
was ascertained that his sickness was small-pox, the county commis-
sioners ordered his discharge from jail, although humanity to the pris-
oner, as well as the safety of the public, forbade a compliance with the
order.   Ordinarily, such conduct on the part of public officers, es-
pecially in view of the fact that county commissioners are not by law
entrusted with the power of discharging prisoners from jail, would call
for comment ; but we forbear, because there may be, and it is to be
hoped are, other facts bearing upon the matter, which are not reported
for the information of the court.

Under the statute above referred to, there can be no doubt but that
it was the duty of the county commissioners to have the infected
dead body removed from the jail and buried ; and this, of course, im-
plies that it shall be done, in the first instance, to say the least, at the
expense of the county.   For some reason, the county commissioners
did not do it, but the jailer, after the lapse of thirty-two hours, em-

>yed the persons to do it who are here now seeking remuneration for
>ir services.

It is true, the statute does not, in terms, give to the jailer author-
y to take precautions against infections, as it does to the county com-
missioners; but he is to have the custody of the jail and of the pris-
oners, and is to keep the prisoners in the jail.   Gen. Stats., ch. 267, sec.
3.   Under these circumstances, if he in good faith performs a public
duty, as urgent and imperative as that shown in the case before us, al-
though that duty is required by law at the hands of other county offi-
cers, we think there can be no doubt but that he should be paid for such
service from the county treasury.   This claim, in substance, stands no
differently from a claim by the jailer for the same service.   It comes
to the same thing as though the jailer had paid for the service, and
was now seeking to recover it back from the county.

As to the claim of the jailer for extra services, under sec. 4, chap.
267, Gen. Stats., if extra services were rendered by him, we see no rea-
son why they should not be allowed in this case the same as in other
cases.

We consider it entirely immaterial that Felch was a pauper, and had
a settlement in Seabrook, or anywhere else.   Public officers are in the
first place to discharge their public duties, in the custody and treat-
ment of prisoners, and in the care of the jails; and the expense neces-
sarily incurred in the discharge of such duties is, in the first instance,
to be borne by the county.   Whether, in the case of a poor person,
some town may ultimately be liable for such expense, is another thing,
and has nothing to do, so far as we can see, with any question pre-
sented here.

The claim of the plaintiff is to be allowed at $150; and as to the
claim of the jailer for extra services, that matter must be presented to
the county commissioners, who should be governed in their action up-
on it by the views herein expressed.